IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM L. NANCE,

    Plaintiff,

 vs.             CIVIL NO.  05-827 LFG/KBM

CITY OF CLOVIS,

    Defendant.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### AND DISMISSING LAWSUIT WITH PREJUDICE

THIS MATTER is before the Court on Defendant City of Clovis' ("City's")[1] Motion for

Summary Judgment [Doc. 39].  The Court carefully considered the pertinent law, the City's motion

and Nance's response [Doc. 43], filed December 23, 2005.  No reply is necessary.

### Summary Judgment Standard

Summary judgment is not a "disfavored procedural shortcut."   Rather, it is an important

procedure designed to "secure the just, speedy and inexpensive determination of every action."

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  Summary judgment is appropriate when the

moving party can demonstrate that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress

& Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins.

Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The party moving for summary judgment has the initial

---

[1]Plaintiff originally named a number of individual defendants along with the City.  However, in earlier Orders
issued by the Court, all of Plaintiff's claims against the individual defendants were dismissed.  Thus, the individual
defendants are no longer a part of this lawsuit.  [Doc. Nos. 30, 31.]

burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 325.

The factual record along with any reasonable inferences that may be drawn therefrom must be examined in the light most favorable to the party opposing summary judgment.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.), *cert. denied,* 537 U.S. 816 (2002).  Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).  The party opposing the motion may not rest upon mere denials in his pleadings to avoid summary judgment.  Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non movant."  Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (internal citation omitted).

It is with these standards in mind that the Court reviews the parties' submissions.

### Defendant's Present Motion

In support of its Motion for Summary Judgment, the City submitted the Affidavit of Nancye Clements, the City's Human Resource Director, (Exhibit A) as well as William L. Nance's own Affidavit (Exhibit B).  Further, the City submitted various other documents generated prior to and

subsequent to Nance's pre-termination hearings.[2]  Defendant City also submitted evidence that

includes the New Mexico Human Rights Division's  determination of no probable cause on Nance's

race discrimination claim.[3]

## Undisputed Facts

The undisputed facts submitted for the Court's consideration are as follows:

1.  Nance was employed by the City of Clovis from June 4, 1984 until May 17, 2004, when

he was terminated.  (Doc. No. 40, Ex., Clements' Aff.)

2.  At the time of Nance's termination, he was employed as a recreation aid in the Parks and

Recreation Department.  (Clements' Aff.)  Nance's position was designated as "safety sensitive."

(Doc. No. 43, Ex. 3C, Employee Certification, dated May 5, 2005.)

3.  Employees in safety sensitive positions, among others, must participate in the City's drug

and alcohol testing program.  (Doc. No. 40, Ex. A-1, City's Alcohol and Drug Policy, p. 60, § 1204.)

4.  In January 2004, Nance tested positive for cocaine metabolites.  (Doc. No. 40, Ex. A-2.)

Employees who test positive for drug use while employed with the City may return to work under

provisions of the City's Drug and Alcohol Policy.  (Doc. No. 40, Ex. A-1.)

---

[2]This hearing was conducted in accordance with provisions of Cleveland Bd. of Education v. Loudermill, 470 U.S. 532 (1985).

[3]There is a split of authority on the issue of admissibility of state agency or federal EEOC determinations.  The Court notes that in Null v. International Paper Co., 656 F.2d 553, 563 (10th Cir. 1981), the circuit court indicated that the trial court did not abuse its discretion in admitting and EEOC determination that the employee failed to state a case under Title VII.  So, too, the Eleventh Circuit has noted that EEOC determinations are generally admissible in bench trials, even their admissibility is problematic in jury trials. Lathem v. Department of Children and Youth Services, 172 F.3d 786, 79 (11th Cir. 1999).  Finally, in Hernandez v. City of Alamogordo, No. CIV 95-344 (D.N.M. Apr. 26, 1996) [Doc. No. 87], this Court previously allowed admissibility of a state agency determination.

5.  The City's Drug and Alcohol Policy allows an employee who tests positive to return to work under certain terms and conditions which include a "Return to Work" drug test which must be negative.  A second requirement is that the employee execute a "Return to Work Agreement."  (Doc. No. 140, Ex. A-1, City's Drug and Alcohol Policy, Article 12, p. 61.)

6.  Because of Nance's original positive test and his desire to return to work, Nance complied with the Drug and Alcohol Policy requirements.  He provided a negative "return-to-duty test" and also signed the Return to Work Agreement on February 27, 2004.  (Doc. 40, Ex. A-1.)

7.  The Return to Work Agreement outlines procedures involved for allowing an employee, who previously tested positive on a drug screen, to return to work.  It also outlines the penalties for failing to comply with the provisions.  As a condition of Nance's continued employment with the City, he agreed to abide by the terms of the Return to Work Agreement, which he executed on February 27, 2004.  (Doc. No. 40, Ex. A-3.)

8.  The Return to Work Agreement which Nance executed provides in relevant part:

> 4.  I understand and agree that I will willingly submit to unscheduled drug and/or alcohol testing at any time, and that my failure to take such a test as requested, or to have a positive result, will be cause for my termination of employment.  I agree to periodic unscheduled follow-up testing that is required of me for a period of sixty (60) months, following the date of this signed agreement.
>
> 5.  I understand and agree that my future employment depends upon my remaining free of drugs and/or alcohol abuse for the entire duration of my continued employment, and that this LAST CHANCE opportunity afforded me by the City of Clovis is conditioned accordingly.  Such conditions, including those above, are recognized to be in addition to the City's right to alter my employment relationship with it, and for reasons set forth above.

(Doc. No. 40, Ex. A-3.)

9.  On April 29, 2004, Nance's supervisor, Recreation Administrator Ruben Gonzales, advised Nance that a drug screener from Aerodyne, Inc., Michael Grube, was there to administer a drug test for Nance.  Nance was in the process of preparing certain worker's compensation paperwork and advised that he was not going to submit to a drug test, as he had something else to do.  Administrator Gonzales told Nance that Nance was required to submit to the test.  (Doc. No. 40, Ex. A-4, May 10, 2004 Memo.)

10.  After Nance was advised of the necessity to take the drug test, Nance chose not to submit to the test, but, instead, left the building and went to his car.  (Ex. A-4 Memo.)

11.  Ten or fifteen minutes later, Nance returned to the building and was notified by his supervisor, Mr. Gonzales, that Nance would be placed on administrative leave until further notice. The reason for the administrative leave was due to Nance's refusal to comply with the drug testing requirement.  Gonzales again asked Nance to submit to drug testing, and Nance responded, "What for?  You already got me on administrative leave."  Nance did not submit to the drug testing as previously requested.  (Doc. No. 40, Nance Aff.)

12.  The refusal to submit to a drug test violates provisions of Nance's Return to Work Agreement.  (Doc. No. 40, Ex. A-3.)

13.  The City's Drug and Alcohol Policy specifically provides, "[an employee under a return to work agreement] agree[s] that he will willingly submit to unscheduled drug and/or alcohol testing at any time and that the failure to take such a test, as requested . . . will result in immediate termination of employment."  (Doc. No. 40, Ex. A-1, Article 12, P. 77.)

14.  After being placed on administrative leave due to the refusal to submit to testing, Nance was afforded a pre-termination hearing.  The notice of pre-termination hearing stated that the City

intended to terminate Nance's employment.  The notice provided Nance with the reason for the proposed action and set a "Loudermill hearing" for May 7, 2005.  (Doc. No. 40, Ex. A-5.)

15.  Two Loudermill hearings were actually conducted--the first on May 7, 2005, the second on May 17, 2005.  Following the Loudermill hearings, Nance was terminated by Rob Carter, Director of Parks and Recreation.  (Doc. No. 40, Ex. A-6.)

16.  Nance sought appellate review pursuant to the City of Clovis' personnel manual.  Ruben Gonzales reviewed the documents relating to the Loudermill hearing and spoke to Nance on May 26, 2005 in reference to the appeal.  (Doc. No. 40, Ex. A-7.)

17.  Following the review, the termination decision was upheld by Ruben Gonzales, Rob Carter and Nancye Clements.  (Clements' Aff.; Exhibits A-7, A-8 and A-9.)

18.  Subsequent to the internal administrative review, Nance took a direct appeal to the City of Clovis Grievance Board and a hearing was conducted on August 11, 2004.  The Grievance Board again upheld Nance's termination, finding that Nance refused to be drug tested; that failure to test subjected Nance to immediate termination; and that Nance's refusal to submit to testing violated the terms of Clovis' Drug and Alcohol Policy and the Return to Work Agreement that Nance executed. (Clements' Aff.; Ex. A-10.)

19.  The Grievance Board's decision was reviewed by the City Manager in accord with the City's appeal process.  The City Manager, Raymond Aragon, upheld the decision.  (Clements' Aff.; Ex. A-11.)

20.  Subsequent to the City Manager's affirmance of the Grievance Board's decision, Nance filed an administrative complaint with the New Mexico Human Rights Commission, alleging race

discrimination.   That Commission determined that there was no probable cause to believe that Nance's termination was the result of his protected status, race or age.  (Doc. No. 40, Ex. A-12.)

21.  Subsequent to his termination, Nance file for unemployment compensation benefits, but his application was denied by the Department of Labor Claims Examiner who concluded that there was work-related misconduct.  (*See* Doc. No. 43, Ex. 11-a, Decision of Appeals Bureau.)

22.  Nance appealed the denial of his unemployment compensation benefits to the Department of Labor Appeals Tribunal.  The Appeals Tribunal concluded that NMSA 1978 § 51-1-7(A)(2) authorized disqualification of unemployment benefits if the discharge from employment was for reasons constituting employment misconduct.  "Misconduct" was defined by the Appeals Tribunal as "conduct in which employees bring about their own unemployment by such callous and deliberate or wanton misbehavior that they have given up any reasonable expectation of receiving unemployment benefits . . . ."  (Doc. No. 43, Ex. 11-b).

23.  The Appeals Tribunal concluded that Nance's refusal did not meet the definition of "such callous and deliberate or wanton misbehavior . . . ."  Indeed, the Appeal Tribunal concluded that Nance "may have *suspected* that the individual [Mike Grube] was there to take him to be tested for drugs, [but] the weight of the evidence does not show that the claimant was specifically told that this was the purpose of the visit."  (Doc. No. 43, Ex. 11-b) (emphasis added).

24.  Based on the Appeal Tribunal's conclusion that Nance only suspected that Mr. Grube might have been there to give a drug test, and that the "weight of evidence" did not support the contention that Nance was told about the drug test, the Appeals Tribunal reversed the Department of Labor claims examiner's denial of benefits and ordered that unemployment benefits be paid.  (Doc. No. 43, Ex. 11-b.)

**<u>Analysis</u>**

When a party makes a *prima facie* showing demonstrating the existence of a race-neutral, business-related reason for its adverse employment decision, the burden shifts to the opposing party to come forward with evidence which demonstrates that the moving party's explanation is pretextual or unworthy of belief.  <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

In this case, the City made a *prima facie* showing demonstrating that Nance's termination was not related to his race, but was related to his breach of the Return to Work Agreement and his refusal to submit to a random drug screening.[4]

With this *prima facie* showing, the burden shifts to Nance to come forward with admissible evidence demonstrating that the City's explanation is not worthy of belief or is pretextual.  <u>Beaird v. Seagate Tech. Inc.</u>, 145 F.3d 1159, 1165 (10th Cir.), *cert. denied,* 525 U.S. 1054 (1998).  Nance fails to shoulder this burden.

Much of Nance's argument is directed to the claims that the original drug testing conducted in January 2004, the test which was positive for cocaine metabolites, was conducted without probable cause.  He further argues that the sealing of his original urine sample was not performed in accord with the City's Drug and Alcohol Policy.  Additionally, Nance asserts that the unemployment compensation Appeals Tribunal awarded him unemployment benefits after finding that Nance was

---

[4]While Nance claims that the City's Drug and Alcohol Policy and testing requirements constitute an illegal search under the Fourth Amendment to the United States Constitution, that argument goes beyond the scope of this lawsuit.  This Title VII lawsuit cannot be used to challenge the legitimacy of the City's drug/alcohol program or the City's return to work agreement.  Rather, this lawsuit is limited to a request for relief pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (as amended in 1991).  The Title VII claim is the only claim which survived the Defendants' earlier motions to dismiss and the Court's earlier rulings.  *See* Doc Nos. 16 & 30; 19 & 31.  Nance's § 1983 claims were dismissed without prejudice.  Thus, a specific § 1983 challenge based on Fourth Amendment grounds could have been asserted in a new lawsuit.  However, that has not occurred and no new lawsuit was filed.

not advised that Michael Grube was there to administer a drug test, and, at most, Nance "may have

suspected" that such was the purpose of Grube's visit.  Finally, Nance argues that he signed the

Return to Work Agreement without reading it or understanding it.

None of these arguments serve to moot the shifting burden requirements under <u>McDonnell-</u>

<u>Douglas</u>, nor do they demonstrate the existence of a material issue of fact on the issues germane to

the Title VII lawsuit.  That is, whether the City terminated Nance because of his race or age.

The fact that the Appeals Tribunal awarded unemployment compensation benefits because

it did not find that Nance's conduct fell within the definition of "misconduct" under the statute, nor

its conclusion that Nance was not specifically told that the purpose of Michael Grube's visit was a

drug test, alters the Court's present conclusion.

For one matter, Nance himself does not argue in this forum that he was unaware of the drug

test request.  To the contrary, Nance's own statements belie the Department of Labor Appeals

Tribunal's finding.  For example, in Nance's Response to the present motion (Doc. 43, p. 9, ¶ 6), he

states:

> On April 29, 2004, Plaintiff's immediate supervisor, Recreation Center
> Administrator Ruben Gonzales, advised Plaintiff around 2:00 p.m. that
> the drug screener from Aerodyne, Inc., Mike Grube, was there to
> administer a drug test for Plaintiff.  Plaintiff responded that he was not
> going to do it, as he had something else to do.  His supervisor told
> him he had to do the test first.

So, too, in paragraph 7 of Nance's response (Doc. No. 43, p. 11), he states, "Plaintiff left the

building and went out to his car.  His supervisor told him that he needed to do the test, but Plaintiff

left in his car."  Additionally, in paragraph 8 of his response, page 11, Nance states, "Plaintiff admits

he was asked again to submit to a drug test, and that he responded, 'what for, you already got me on administrative leave.'"

Thus, Nance does not make the same argument in this tribunal that formed the basis of the unemployment compensation Appeals Tribunal's reversal of denial of benefits.  To the contrary, Nance focuses his complaint on the alleged illegitimacy of the underlying drug and alcohol program and the City's alleged failure to comply with probable cause requirements and ensuring that Nance knew and understood the terms of the Return to Work Agreement which he executed.

Even if the Court were to assume that Nance was correct and that the City terminated Nance based on a misunderstanding of Fourth Amendment law or a misapplication of the Drug and Alcohol Policy, that conclusion would not serve to benefit Nance.

In Tatum v. Philip Morris, Inc., 16 F.3d 417, 1993 WL 520983 (10th Cir. Dec. 14, 1993), *cert. denied*, 511 U.S. 1083 (1994), an unpublished decision that is considered here because of the similarity of claims, the Tenth Circuit considered what happens in a circumstance where an employer acts on a mistaken belief.[5]  In Tatum, the employer presented substantial evidence that the plaintiff, an African American, "was fired for dishonesty and insubordination based on his alleged theft of [a] bottle of wine after he specifically was told by a supervisor not to take it."  Tatum, 1993 WL 520983 at *3.  During summary judgment proceedings, Tatum presented eye-witness testimony that he did not steal the wine.  Thus, the employer's stated justification for the termination was false.  The district judge nonetheless granted judgment for employer because there was "no evidence that [the]

_____

[5]The Tenth Circuit cited and relied on Tatum v. Phillip Morris in affirming summary judgment in Tesh v. United States Postal Service, 349 F.3d 1270, 1273 (10th Cir. 2003).

representatives of [the employer] did not *believe* that he stole the bottle of wine." Id. (emphasis added).

In other words, it did not matter if the employer's decision to terminate was based on a mistake, i.e., that Tatum was a thief.  It was clear that the employer was motivated by its belief that Tatum was a thief rather than by Tatum's race.  In Tatum, the Tenth Circuit affirmed the dismissal:

> We affirm judgment in favor of the employer because the record could only support the conclusion that the employer reasonably, even if erroneously, believed that the employee was dishonest and fired him on that basis.

*See* id.

In Tesh v. U.S. Postal Service, 349 F.3d 1270, 1273 (10th Cir. 2003), the Tenth Circuit reached the same conclusion.  In that case, the postal service terminated an employee believing that he had filed a fraudulent workers compensation claim.  The employee, Tesh, claimed that the true reason for his termination was his disability.  Relying on Tatum, the court dismissed Tesh's complaint. Again, the Tenth Circuit affirmed, stating:

> [A]lthough we have stressed the importance of the employer's belief and although we examined the facts as they appear to the employer, the touchstone is whether the employer *reasonably* believed that the report was accurate.  If an employee submitted evidence showing that the investigation was a sham only done to cover up discrimination, an employer could not reasonably rely on it.  Since no such showing has been made here, we affirm the district court's judgment on the termination issue for lack of evidence of pretext.

Tesh, 49 F.3d at 1274.

In this case, while termination of an employment relationship of long duration for refusal to submit to a drug test may appear harsh, it is clearly not a termination that is based on Nance's race or age.  The City's rationale for the termination was that Nance's refusal to immediately submit to

11

the drug test when asked, and Nance's refusal to submit when he returned from his car violated

express City policies and the agreement entered into by Nance.  While the Court expresses sympathy

with Nance's loss of his job after many, many years in municipal employment, it is important to note

that Title VII is not a mechanism to cure what may be viewed as unfairness in the workplace, unless

the unfairness is based on a person's protected status.

> Title VII does not compel every employer to have a good reason for
> its deeds; it is not a civil service statute.  Unless the employer acted
> for a reason prohibited by the statute, the plaintiff loses.

Benzies v. Illinois Dept. of Mental Health & Developmental Disabilities, 810 F.2d 146, 148 (7th Cir.),

*cert. denied,* 483 U.S. 1006 (1987) (internal citation omitted).

Similarly, in Berge v. Apfel, 141 F.3d 1184, 1998 WL 165118 (10th Cir. 1998), this Circuit

Court stated:

> "Title VII does not compel every employer to have a good reason for
> its deeds; it is not a civil service statute."  Flasher, 986 F.2d at 1321
> (quotation omitted).  An employer does not need to "litigate the
> merits of the reasoning, nor does it need to prove that the reason
> relied upon was bona fide, nor does it need to prove that the reasoning
> was applied in a non-discriminatory fashion." Id. at 1316; Pannis, 60
> F.3d at 1491.  The fact that the Commissioners' proffered explanation
> rested, in part, upon a subjective determination by Mr. Anglada, does
> not mean that the Commission failed to meet its burden of production.
> As the Supreme Court pointed out in McDonald Douglas itself, the
> mere fact that subjective criteria are involved in the reason articulated
> by an employer does not mean it cannot be accorded sufficient rebuttal
> weight to dispel the inference of discrimination raised by the *prima
> facie* case. *See* McDonald-Douglas, 411 U.S. at 803.

Moreover, the court does not sit as a super-board of directors approving or disapproving

business decisions and judgments of an employer. *See* Brill v. Lante Corp., 119 F.3d 1266, 1272 (7th

Cir.1997) (courts do not sit as super-personnel boards overseeing employer's business decisions); *See*

*also* Cibas v. Lockwood, 1994 WL 924145 at *25 (D.N.M. Aug. 22, 1994). To the contrary, the court's function is to determine if an individual suffered an adverse job action due to his or her protected status, i.e., race, gender, ethnicity, age, religion, or physical disability.

In this case, the City made a *prima facie* showing of the existence of a race-neutral, business-necessity reason for its termination.  Nance failed to come forward with admissible evidence demonstrating that the City's explanation is pretextual or unworthy of belief.  Further, Defendant City presented clear and convincing evidence showing that the reason it terminated Nance was because of his violation of the Return to Work Agreement and refusal to take the drug test.  There is simply no evidence before the Court that demonstrates the City's decision is "unworthy of belief" or "pretextual."  Thus, under McDonnell-Douglas, Nance has not overcome the City's *prima facie* showing and the Court's analysis must end at this point.

It is of no import that the City's policy, under the facts of this case, appears harsh.  Even harsh policies are enforceable as long as they do not violate federal law.

The Court finally notes that the City also submitted findings by the Department of Labor Human Rights Division on Nance's complaint of discrimination.  The Human Rights Division provided the following summary of its reasons for a conclusion of no probable cause:

- You were employed by Respondent as a Recreation Aide.
- You tested positive in January 2004 for cocaine.
- You returned to work in March 2004 and signed a "Return to Work Agreement."  This agreement indicated that you were subject to further testing.
- In April 2004 you were asked to take another test pursuant to the return to work agreement.
- Respondent states that when the specimen collector came to the work site, you told him you had to leave to do something. They state that you were informed that you had to take the

      test and if you did not, it would be considered a positive test and grounds for termination.

-   When you left, you were placed on administrative leave pending a hearing.
-   The evidence shows that employees of different races and ages have been terminated for similar things.
-   The evidence shows that Respondent employs others within the protected age group.
-   The evidence shows Respondent followed the policies regarding drug testing.
-   There is no evidence that Respondent perceived you as disabled.

The findings of the Human Rights Division are consistent with this Court's own analysis. The Court finds that the material facts are not in dispute and that Defendant is entitled to judgment as a matter of law. Accordingly, the Court grants Defendant City's motion for summary judgment [Doc. No. 39] and dismisses with prejudice Nance's Title VII discrimination complaint.

    IT IS SO ORDERED.

                               _____
                                Lorenzo F. Garcia
                                Chief United States Magistrate Judge